UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


PERRY MACKALL,

       Petitioner,                               Hon. Richard Alan Enslen

v.                                              Case No. 5:04-CV-200

CARMEN PALMER,

       Respondent.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Mackall's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Mackall's petition be **denied**.

## BACKGROUND

On February 24, 2001, fourteen year old M.P., and her twelve year old sister S.G., spent the night with their grandmother, who was married to Petitioner. (Trial Transcript, Sep. 24, 2001, 6-7, 40). The following morning M.P.'s grandmother left the residence, leaving Petitioner alone with the two young girls. *Id.* at 7-8. Later that morning, Petitioner instructed S.G. to go to the basement to "move boxes." *Id.* at 42-43. Soon thereafter, Petitioner "grab[bed]" M.P. tightly around the arms and took her into the sewing room. *Id.* at 8-9, 22. M.P. struggled - without success - to free herself from Petitioner's grip. *Id.* at 22-23. Petitioner also refused M.P.'s requests "to let go" of her. *Id.* at 22. Instead,

Petitioner "wrestled [M.P.] down to the floor," pulled up her shirt and "put his mouth on [her] breast" and then removed M.P.'s "pants and panties." *Id.* at 9-11. Petitioner then removed his pants and "trie[d] to push his penis in [M.P.'s] vagina." *Id.* at 10. Petitioner's penis "wasn't hard," however, and he was unable to penetrate M.P. *Id.*

In the midst of this assault, S.G. (having returned from the basement) "walked in the doorway" of the sewing room and observed Petitioner "having sex" with M.P. *Id.* at 43-45. S.G. then ran out of the house, with Petitioner in close pursuit. *Id.* at 11-12, 45-46. M.P. ran outside as well. *Id.* at 12, 45. M.P. was crying and S.G. was screaming that she was "going to call the police" and "tell everybody." *Id.* at 11-12, 45-46.

Petitioner persuaded M.P. and S.G. to return to the house by promising them that they would be able to telephone their mother. *Id.* at 13. However, after the trio returned to the house Petitioner refused to let M.P. or S.G. use the telephone. *Id.* Instead, Petitioner instructed M.P. to go to the bathroom and "clean up." *Id.* at 14, 30-32, 47. Petitioner then instructed S.G. "not to say anything, act like nothing happened because [M.P., S.G., and their mother] would get split up, and he'll get sent to jail, or possibly killed." *Id.* at 13-14, 46-47.

When M.P.'s grandmother returned home, she asked M.P. and S.G. why they were crying, to which Petitioner responded that he had been "fooling around" with M.P. *Id.* at 14-15, 47-48. The police were contacted, after which Petitioner became "suicidal" and stood in the driveway with a firearm, where he awaited the arrival of the police. *Id.* at 48, 60-61. In light of Petitioner's behavior, the responding officer determined that it was safer to remain a few blocks from the residence until additional officers arrived. *Id.* at 61. However, before additional officers arrived Petitioner escaped in his car. *Id.* at 61-62. When officers arrived at the residence, M.P. was "distraught" and "crying." *Id.* at 63. She

was taken to a hospital where an examination revealed "a redness and slight swelling to the area surrounding the vaginal opening." *Id.* at 15-17, 48, 59.

Petitioner was charged with one count of first degree criminal sexual conduct and one count of second degree criminal sexual conduct. (Preliminary Examination Transcript, Mar. 14, 2001, 41). Following a bench trial, Petitioner was convicted of one count of assault with intent to commit criminal sexual conduct involving penetration, in violation of M.C.L. 750.520g(1). (Trial Transcript, Sep. 24, 2001, 71-72). Petitioner was sentenced to serve 1-10 years in prison. (Sentencing Transcript, Oct. 30, 2001, 10). Petitioner appealed his conviction to the Michigan Court of Appeals asserting the following claims:

> I. The trial court's determination of guilt must be reversed when the great weight of the evidence favored Defendant's innocence, and the complainant gave radically different testimony between trial and preliminary examination.
>
> II. Defendant was denied effective assistance of counsel when trial counsel called no witnesses, gave no closing argument, and failed to point out the irregularities in complainant's testimony.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Mackall*, No. 239724, Opinion (Mich. Ct. App., April 22, 2004). Asserting the following claims, Petitioner then moved in the Michigan Supreme Court for leave to appeal:

> I. The trial court's determination of guilt must be reversed when the great weight of the evidence favored Defendant's innocence, and the complainant gave radically different testimony between trial and preliminary examination.
>
> II. Defendant was denied effective assistance of counsel when trial counsel called no witnesses, gave no closing

          argument, and failed to point out the irregularities in complainant's testimony.

    III.    Defendant Mackall was denied his right to effective assistance of counsel, at sentencing, where counsel insisted that they not antagonize the judge with challenges to the misleading, inaccurate and false information present in the presentencing report.

The court denied Petitioner's request for leave to appeal, stating that "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Mackall*, No. 126242, Order (Mich., Oct. 25, 2004). On November 23, 2004, Petitioner submitted the present petition for writ of habeas corpus in which he asserts the following claims:

    I.    Lack of evidence.

    II.    Ineffective assistance of counsel.

    III.    Disproportionate sentence.

## STANDARD OF REVIEW

Mackall's petition, filed November 23, 2004, is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

    (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

        (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

>> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also, Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535

U.S. at 694; *Williams*, 529 U.S. at 409-12.  Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular. . .case" or "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Lancaster*, 324 F.3d at 429 (quoting *Williams*, 529 U.S. at 407).

Furthermore, for a writ to issue, the Court must find a violation of Supreme Court authority.  The Court cannot look to lower federal court decisions in determining whether the relevant state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law.  *See Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the factual findings of the state court are presumed to be correct.  *See Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1)).  Petitioner can rebut this presumption only by clear and convincing evidence.  *Id.*

The deferential standard articulated by the AEDPA, however, does not apply if the state has failed altogether to review a particular claim.  As the Sixth Circuit has indicated, where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer."  In such circumstances, the court conducts a *de novo* review.  *See McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003); *see also Wiggins v. Smith*, 123 S. Ct. 2527, 2542 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340

F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS

I.     **Sufficiency of the Evidence Claim**

Petitioner asserts that he is entitled to habeas relief because "there is no evidence to warrant this conviction." Claims challenging the sufficiency of the evidence are governed by the standard articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979), pursuant to which it must be determined whether viewing the evidence in the light most favorable to the prosecution and according the benefit of all reasonable inferences to the prosecution, any rational trier of fact could have found Petitioner guilty beyond a reasonable doubt. *See O'Hara v. Brigano*, - - - F.3d - - -, 2007 WL 2372259 at *6 (6th Cir., Aug. 21, 2007) (citing *Jackson*, 443 U.S. at 319-26). Furthermore, where the record supports conflicting inferences the Court "must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *O'Hara*, 2007 WL 2372259 at *6 (quoting *Jackson*, 443 U.S. at 326).

Under Michigan law in effect as of the date Petitioner committed the acts for which he was convicted, the elements of assault with intent to commit criminal sexual conduct involving penetration were: (1) the defendant committed an assault; and (2) the assault was undertaken with the intent to commit sexual penetration. *People v. Love*, 283 N.W.2d 781, 784 (Mich. Ct. App. 1979).

Viewing the evidence detailed above in a light most favorable to the prosecution, and according the benefit of all reasonable inferences to the prosecution, a reasonable juror could certainly have found Petitioner guilty beyond a reasonable doubt of assault with intent to commit criminal sexual

conduct involving penetration. The Michigan Court of Appeals determined that this particular claim was without merit. In light of the above authority and facts, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

**II.        Ineffective Assistance of Counsel Claim**

Petitioner asserts several grounds to support the claim that his trial counsel rendered ineffective assistance. Petitioner faults his attorney for failing to secure the testimony at trial of five individuals who would have testified that: (1) Petitioner had "on numerous occasions" spent time alone with the victim; (2) "the story was not what actually happened;" and (3) "money was the motive behind the claim." Petitioner also claims that his attorney prejudiced his defense by failing to give an opening or closing statement. Finally, Petitioner faults his attorney for failing to challenge his conviction on "the lesser crime."

To establish that he was denied the right to the effective assistance of counsel, Petitioner must first establish that his counsel's performance was so deficient that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Accordingly, it must be demonstrated that counsel's actions were unreasonable under prevailing professional norms. *Id.* at 688. In making this determination, however, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [Petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689.

Second, Petitioner must further establish that his attorney's performance was prejudicial in that it denied him a fair trial. *See Id.* at 687; *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996). This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*), *cert. denied*, 113 S. Ct. 2969 (1993) (emphasis in original); *see also, West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996).

As noted above, Petitioner asserts that his attorney was ineffective for failing to secure the testimony of several individuals who would have allegedly testified in his behalf. Even were the Court to find that such constituted deficient performance, Petitioner has presented absolutely no evidence that these individuals would have provided beneficial testimony. Thus, Petitioner cannot establish that he suffered prejudice as a result of this alleged shortcoming.

As for Petitioner's claim that his attorney failed to give an opening or a closing statement, again even if counsel's actions constituted deficient performance Petitioner cannot demonstrate that he suffered prejudice resulting therefrom. Neither attorney gave an opening statement in this matter and Plaintiff has failed to identify how his defense was prejudiced by his attorney's failure to give an opening statement in a non-jury trial. Moreover, counsel did give what amounted to a closing argument. At the close of the State's case, Petitioner moved for a directed verdict and his attorney offered argument in support thereof. (Trial Transcript, Sep. 24, 2001, 68-72). Considering that Plaintiff presented no evidence in his defense, presenting a "closing argument" immediately thereafter could reasonably be perceived as unnecessary and, therefore, constitutes legitimate trial strategy which Petitioner has not demonstrated prejudiced his defense.

Finally, Petitioner asserts that his attorney failed to challenge his conviction on "the lesser crime." Petitioner has failed to clarify or elaborate upon this argument. As noted above, Petitioner was charged with one count of first degree criminal sexual conduct and one count of second degree criminal sexual conduct. The Court has interpreted Petitioner's reference to "the lesser crime" as a reference to the charge against him for second degree criminal sexual conduct. Petitioner was not convicted of this charge. Thus, counsel can hardly be faulted for failing to mount a "challenge" as to a charge of which Petitioner was not convicted.

The Michigan Court of Appeals determined that these particular claims were without merit. In light of the above authority and facts, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, these claims raise no issue upon which habeas relief may be granted.

**III.        Sentencing Claim**

Petitioner asserts that "the proportion of his sentence is inexcusable." The Court interprets this statement as asserting the claim that Petitioner's sentence violates the principle of proportionality articulated by the Michigan Supreme Court in *People v. Milbourn*, 461 N.W.2d 1 (Mich. 1990). Before seeking habeas relief in the federal courts, Petitioner must first exhaust in the state courts those claims upon which habeas relief is sought. *See* 28 U.S.C. § 2254(b)(1). Petitioner has not properly exhausted this claim, but this failure notwithstanding, this claim may nonetheless be denied on the merits. *See* 28 U.S.C. § 2254(b)(2).

The Sixth Circuit has observed that because the United States Constitution "contains no strict proportionality guarantee," a claim that the sentencing court violated Michigan's principles of proportionality is not cognizable on federal habeas review. *Lunsford v. Hofbauer*, 1995 WL 236677 at *2 (6th Cir., April 21, 1995) (citing *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991)). Moreover, the Eighth Amendment to the United States Constitution "does not require strict proportionality between crime and sentence." *United States v. Layne*, 324 F.3d 464, 473 (6th Cir. 2003) (quoting *Harmelin*, 501 U.S. at 1001). Instead, the Eighth Amendment simply forbids extreme sentences that are "grossly disproportionate" to the crime committed. *Layne*, 324 F.3d at 473. In this case, Petitioner's sentence was in no way "grossly disproportionate" to the crime committed. The Court recommends, therefore, that this claim presents no issue upon which habeas relief may be granted.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Mackall's petition for writ of habeas corpus be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: November 9, 2007          /s/ Ellen S. Carmody
                                ELLEN S. CARMODY
                                United States Magistrate Judge